**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

| | | |
|---|---|---|
| RONICA JOHNSON, *on behalf of herself and all similarly situated individuals,*<br>1809 Spence Street<br>Baltimore, Maryland 21230 | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:22-cv-427 |
| | : | |
| v. | : | |
| | : | |
| EQUIFAX, INC.<br>1550 Peachtree Street, NW<br>Atlanta, Georgia 30309 | : | |
| | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Ronica Johnson, by counsel, *on behalf of herself and all similarly situated individuals*, brings the following Complaint against Defendant Equifax, Inc. ("Equifax"). In support of her Complaint, Plaintiff alleges as follows:

**INTRODUCTION**

1.      When enacting the Fair Credit Reporting Act ("FCRA"), Congress found that consumer reporting agencies "have assumed a vital role in assembling and evaluating . . . information on consumers." 15 U.S.C. § 1681(a)(3). Thus, Congress saw a need to ensure that consumer reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Id.* § 1681(a)(4). To accomplish Congress' goal, the FCRA contains several requirements to protect consumers.

2.      *First,* § 1681e(b) requires that consumer reporting agencies follow reasonable procedures to assure maximum possible accuracy of the information on the individuals about

1

whom they report. 15 U.S.C. § 1681e(b). This section imposes a high standard on consumer reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, No. 1:10–cv–1064, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993))).

3.      Plaintiff alleges that Equifax violates § 1681e(b) in two ways.

4.      Plaintiff first asserts that Equifax violated § 1681e(b) through its continued reporting of criminal records that had been expunged. As to Plaintiff, Equifax provided her potential landlord with a background report that included criminal records that had been expunged for more than two years. In other words, those records no longer existed in the State of Maryland's records,[1] yet Equifax continued to report them as if they did. Equifax's reporting further created the misleading appearance that those records had been obtained from the State of Maryland at the time of Equifax's reporting. Maryland's records, however, contradicted Equifax's reporting. Upon information and belief, Equifax has no policy or procedure to remove criminal records that have been expunged. Thus, if any criminal records *once appeared* in Maryland's court records, Equifax continues to report them in their background reports even if they had been expunged.

5.      Plaintiff's second § 1681e(b) claim asserts that Equifax used overly broad matching criteria in response to its customers' requests for background checks. In this instance, among other

---

[1] In Maryland, "[e]xpungement is the removal of records from public inspection." Maryland Judiciary, *Expungement: Information About Removing Criminal Records from Public Access in Maryland* at 1, *available at* http://mdcourts.gov/courtforms/joint/ccdccr072br.pdf (last visited Feb. 7, 2022).

inaccurate items, Equifax provided Plaintiff's potential landlord with information stating that Plaintiff was a defendant in a civil case pertaining to unpaid taxes brought by the State of Maryland. Equifax matched this information to Plaintiff even though it knew—and the underlying public record reflected—that Plaintiff (Ronica *Letia* Johnson) had a different middle name than the subject of the public record (Ronica *Y.* Johnson).

6.      Equifax's inaccurate reporting easily could have been prevented if it simply required a first name, last name, *and* middle name match prior to the furnishing of a public record. In fact, consumer reporting agencies often generate mismatched reports even when they use more data points. *See* Nat'l Consumer Law Ctr., *Broken Records* at 15 (2012) (explaining that "mismatched reports" are "due in large part to unsophisticated matching criteria" and that "many private screening companies rely solely on first name, last name, and date of birth").

7.      Equifax's inaccurate reporting caused a prospective landlord to deny Plaintiff's housing application. Plaintiff and her young children, in turn, became homeless, eventually finding temporary refuge in a downtrodden motel infested with insects and rodents, as well as criminal activity. Overpaying for temporary housing, Plaintiff—a disabled woman with limited income—had to scrounge to afford life's most basic needs, such as her families' next meal. Plaintiff's financial woes naturally snowballed, and she was unable to pay bills. Plaintiff eventually obtained housing in a less desirable location for her and her children.

8.      By failing to maintain any procedure to (1) remove from its reports criminal records that had been expunged and (2) ensure that its reports pertain only to the applicant, Equifax violates the FCRA's mandate that it "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

Because the putative class members were subject to the same procedures and suffered the same overarching harm, Plaintiff's § 1681e(b) claims are capable and appropriate for class resolution.

9.      *Second*, § 1681c prohibits consumer reporting agencies from reporting adverse, non-criminal conviction records of information that antedate the report by more than seven years. Put differently, Congress made a "a policy choice to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Beseke v. Equifax Info. Servs. LLC*, No. CV 17-4971 (DWF/KMM), 2019 WL 6250756, at *3 (D. Minn. Nov. 22, 2019) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3d Cir. 2014)). To strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

10.     Despite the FCRA's requirement that certain information be removed from consumers' reports, Equifax continues to report public record information that antedates the report by more than seven years.

11.     As to Plaintiff, on May 25, 2021, Equifax furnished to Plaintiff's potential landlord information from civil cases originating on February 1, 2010, February 18, 2011, May 21, 2012, October 26, 2012, December 18, 2012, and January 2, 2013. Even ignoring the fact that some of the reported records had nothing to do with Plaintiff, Equifax should have removed such outdated and obsolete items from Plaintiff's background report.

12.     By systematically incorporating obsolete public records into its background reports, Equifax violated § 1681c(a), as well as the FCRA's corresponding requirement that agencies "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

4

13.     *Third*, § 1681i requires that consumer reporting agencies conduct reasonable investigations within 30 days from receipt of consumer disputes. Equifax did not conduct reasonable investigations in response to Plaintiff's disputes, and in no event, within 30 days. Instead, Equifax first assured Plaintiff that its reporting was accurate because it pulls information directly from the State of Maryland. Equifax even directed Plaintiff to contact the court system before it investigated the matter. But the State of Maryland's records did not include the criminal records that had been expunged but were still being reported by Equifax. Had Equifax cross-referenced its own records with the records on which it was ostensibly relying, it would have discovered the inaccuracy and immediately fixed its reporting. Doing so would have prevented the parade of horribles that Plaintiff endured, including significant actual damages, damage to reputation, embarrassment, humiliation, and emotional distress.

## JURISDICTION

14.     The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district and division, and Plaintiff resides here.

## PARTIES

16.     Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

17.     Equifax is a Georgia limited liability company doing business throughout the United States, including in the State of Maryland. It has its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

18.     Equifax is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling or

5

evaluating consumer credit information or other information on consumers to furnish consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the internet, to prepare and furnish such consumer reports.

19.     Equifax sells consumer reports, also called background reports, tenant screening-reports, and credit reports, to landlords to use in deciding whether to rent to a prospective tenant. These reports include the prospective tenant's employment history, criminal history, landlord tenant court records, and credit information.

## FACTS

*Equifax's Tenant Screening Business*

20.     Since 1994, Equifax has "provid[ed] resident screening services to the rental market."[2] Presently, Equifax "provides the multi-family housing industry with an easy web-based screening program to effectively prescreen rental applicants."[3]

21.     Equifax identifies one "constant" that supposedly plagues the multi-family housing industry: "fraudulent and criminal activity."[4] As a result, Equifax aims to serve its customers as a "one-stop shop" that provides landlords with information about applicants from Equifax's "[c]omprehensive criminal database."[5]

22.     Upon information and belief and as reflected by Plaintiff's background report, discovery will show that—despite its proclaimed focus on exposing criminal applicants—Equifax

---

[2] Equifax, *Resident screening services*, *available at* https://assets.equifax.com/marketing/US/assets/efx-usa-0939_resident_screening_services_ps.pdf (last visited Feb. 7, 2022).

[3] *Id.*

[4] *Id.*

[5] *Id.*

does not have a system in place that ensures the sustained accuracy of the criminal and other court information that it reports.

*Equifax's Practice of Reporting Criminal Records That Have Been Expunged*

23.     As to Maryland rental applicants, not only does Equifax pull information from an unknown source that does not remove records that have been expunged from its database, but once that information is housed in Equifax's system, Equifax makes no ongoing effort to ensure that obsolete information is removed, and the information is reported about the correct consumer.

24.     For example, when a Maryland resident has a criminal record expunged, Equifax has no procedure in place to remove the original criminal record from its database. This continued reporting of the original criminal offense disregards the legal effect of the expungement, *i.e.*, to remove arrests and/or convictions from public inspection *entirely as if they never happened*. Worse yet, Equifax's reporting creates the appearance that the State of Maryland itself still considers the person to have a criminal record.

25.     Equifax easily could remove expunged criminal information by ensuring that it only incorporates current records from the State of Maryland. Equifax, however, chooses to bypass such minimal efforts because it is more efficient and profitable to regurgitate previously acquired public record information without analyzing or confirming that it is complete and up to date.

*Equifax's Practice of Reporting Outdated and Inapplicable Public Records*

26.     In addition to its failure to remove criminal records that have been expunged, Equifax includes far more information in its reports than the FCRA allows, in a summary fashion, despite warnings from the online Maryland Judiciary website.[6] For example, as to Plaintiff,

---

[6] The Maryland Judiciary's "Case Search" website itself warns: "The Judiciary provides this information as a public service and makes no warranties, either expressed or implied, regarding its accuracy, reliability, currency, completeness, or suitability for any particular purpose. **PLEASE**

Equifax included summary: (1) arrest information that did not result in a conviction after seven years have elapsed; and (2) civil court records after seven years have elapsed.

27.     Equifax also includes court records for individuals whose names simply match the first and last names of the person about whom the report relates. This necessarily causes the dissemination of information that does not relate to applicants about whom Equifax reports.

28.     Even if it was somehow unclear, in order to assure maximum possibly accuracy, Equifax should have obtained the underlying court records rather than reporting incomplete, summary information for an online name search.

*Facts Regarding Plaintiff*

29.     In May 2021, Plaintiff applied through Real Property Management Capital to rent a home in Baltimore, Maryland.

30.     As part of the application process, Plaintiff had to undergo a background check.

31.     For her landlord to obtain her background report, Plaintiff provided her name, current address, date of birth, and social security number.

32.     Real Property Management Capital ordered Plaintiff's background report from Equifax on or around May 25, 2021. In requesting Plaintiff's background report, the landlord provided Equifax with Plaintiff's personal identifying information.

33.     Equifax provided Plaintiff's background report to Real Property Management Capital on or about May 25, 2021—the same day the report was requested.

34.     The report that Equifax provided to Real Property Management Capital about the Plaintiff was inaccurate, incomplete, and materially misleading.

---

**NOTE that this information is NOT intended to be used as an authoritative public record or as a legal document and shall have no legal force or effect**." Maryland Judiciary, *Maryland Judiciary Case Search Disclaimer*, https://casesearch.courts.state.md.us/casesearch (last visited Feb. 7, 2022) (emphasis added).

35.     First, the report included various criminal records from the District Court for Baltimore City dated on or around March 23, 2015, under Case Number 4B02290439, including seven records that had been expunged.[7]

36.     Because the records had been expunged, they should not have been reported to Real Property Management Capital.

37.     The Expungement Order further required that the custodians in possession of court and police records file a "Certificate of Compliance" documenting their adherence to the Expungement Order's instructions.

38.     Upon information and belief, the Baltimore City Police Department and the District Court of Maryland for Baltimore City removed all court and police records pertaining to Case Number 4B02290439 from public inspection.

39.     In fact, following the court's issuance of the Expungement Order, the Case Search website no longer referred to Case Number 4B02290439 or any of the criminal charges filed under it.

40.     Although the State of Maryland had expunged Case Number 4B02290439, Equifax continued to include the information in Plaintiff's background report, even reporting it to her potential landlord.

41.     Second, Equifax's report incorporated information from the Case Search website pertaining to "Last Name: JOHNSON" and "First Name: RONICA."

42.     This information included five, non-criminal court proceedings that antedated the report by more than seven years.

---

[7] On or around May 15, 2019, a judge for the District Court of Maryland for Baltimore City signed an order that expunged "all court and police records pertaining to" Case Number 4B02290439 ("Expungement Order").

43.     Specifically included were two civil matters in which Plaintiff filed suit, two civil matters in which Plaintiff was a defendant, and a civil child support dispute initiated by Plaintiff.

44.     The information reported by Equifax also included multiple court records pertaining to *other* individuals that shared the same first and last name as Plaintiff. Those individuals' records did not even list the same middle name as Plaintiff, yet Equifax included this information in her report as if it belonged to Plaintiff.

45.     Plaintiff was denied housing as a result of Equifax's background report and the incorporated search results.

46.     Plaintiff then disputed with Equifax the inclusion of all records pertaining to Case Number 4B02290439 in her background report.

47.     In response to one written dispute, Equifax advised Plaintiff that the disputed information likely was "obtained from a computer database prescribed by the source of the information (ie. courthouse or other government entity)." Equifax further directed Plaintiff to correct the information from the source of the information itself: "If the information is incorrect, the consumer will need to have this corrected with the source of the information, ie. courthouse or other government entity."

48.     Following that response, Plaintiff confirmed that the Maryland Judiciary was not reporting her expunged criminal history.

49.     Plaintiff again disputed the information with Equifax in writing, advising Equifax that not even the Maryland Judiciary's records incorporated into the Equifax report included charges filed under Case Number 4B02290439.

50.     On or about January 19, 2022, months after Plaintiff first disputed the inaccurate reporting, Equifax finally informed Plaintiff that "the incorrect information will be removed from the database."

51.     Had Equifax first conducted a reasonable, or any, investigation as required under the FCRA, it would have been readily apparent that the expunged criminal records should have been deleted from Plaintiff's background report immediately. Equifax then would have deleted the expunged criminal records from Plaintiff's background report, and Plaintiff would have been able to obtain housing for herself and her children. Instead, Plaintiff suffered significant actual damages, damage to reputation, embarrassment, humiliation, and emotional distress.

52.     At all times relevant to this lawsuit, Equifax's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Equifax's conduct was intentionally accomplished through its intended procedures; these procedures have continued even though other consumer reporting agencies have faced court decisions and consumer complaints critical of similar conduct; and Equifax will continue to engage in this conduct because it believes there is greater economic value in selling overinclusive consumer reports than in providing accurate reports.

53.     Equifax takes no action to determine whether criminal records are expunged before publishing background reports to its customers and in response to disputes from prospective tenants. This failure is unreasonable and willful.

54.     If Equifax had reasonable procedures to ensure that the information it published about prospective tenants to its customers was as accurate as possible and not obsolete, it would not have included expunged criminal records on Plaintiff's report.

55.     Equifax takes no action to determine whether it reports non-criminal conviction court records more than seven years old before publishing background reports to its customers. This failure is unreasonable and willful.

56.     If Equifax had reasonable procedures to ensure that the information it published about prospective tenants to its customers was as accurate as possible and not obsolete, it would have omitted all information in Plaintiff's report that included court proceedings over seven years old and court proceedings pertaining to other individuals, all records of which were displayed in an incomplete and summary fashion.

57.     Equifax understands the FCRA's requirement that the information it reports about prospective tenants must be as accurate as possible and that its failure to have procedures in place to remove criminal records that have been expunged and other obsolete information violates the FCRA. Equifax knew or had reason to know that its conduct conflicted with FTC and CFPB guidance, case law, and the plain language of the FCRA.

**COUNT I – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**Class Claim**

58.     Plaintiff restates each of the preceding allegations.

59.     Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a class defined as follows:

> All natural persons residing in the State of Maryland who: (a) were the subject of a tenant screening report sold by Equifax; (b) in the five years predating the filing of this Complaint and continuing through the date on which the class list is prepared; (c) which identified the applicant as having been charged or convicted with a crime; and (d) where the underlying record had been expunged by the State of Maryland.

60.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are

identifiable through documents maintained by Equifax and the class members may be notified of the pendency of this action by published, mailed notice, or both.

61.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Equifax had in place reasonable procedures designed to avoid the reporting of expunged criminal records; (2) whether Equifax's conduct violated the FCRA; and (3) whether Equifax's conduct was willful.

62.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Plaintiff's claims are also based on the same facts and legal theories as each of the class members' claims.

63.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

64.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The

damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Equifax's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

65.     In the alternative, Plaintiff could seek an issue-only certification under Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4) as to Equifax's liability and willfulness and leave the damages issue for individual determination.

66.     As described above, Equifax violated § 1681e(b) of the FCRA as to Plaintiff and each of the class members by reporting expunged records that no longer were subject to public inspection by the State of Maryland.

67.     In turn, Equifax had in place no procedures designed to present these violations, which are apparent by even a cursory review of the records on which Equifax was relying.

68.     Plaintiff and each putative class member suffered real and actual harm and injury.

69.     For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Equifax's files and reports.

70.     Class members also were falsely painted as irresponsible tenants to their prospective landlord.

71.     Equifax's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.

72.     As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs under 15 U.S.C. § 1681n.

**COUNT II – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**Class Claim**

73.     Plaintiff restates each of the preceding allegations.

74.     Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a class defined as follows:

> All natural persons residing in the United States who: (a) were the subject of a tenant screening report sold by Equifax; (b) in the five years predating the filing of this Complaint and continuing through the date on which the class list is prepared; (c) which included a public record matching the applicant's first and last name; (d) that did not match the applicant's middle name or middle initial.

75.     **Numerosity.** Fed. R. Civ. P 23(a)(1). Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Equifax and the class members may be notified of the pendency of this action by published, mailed notice, or both.

76.     **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Equifax had in place reasonable procedures designed to avoid the reporting

of court proceedings involving individuals with middle names different than the persons about whom its reports related; (2) whether Equifax's conduct violated the FCRA; and (3) whether Equifax's conduct was willful.

77.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Plaintiff's claims are also based on the same facts and legal theories as each of the class members' claims.

78.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

79.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Equifax's

conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

80.     In the alternative, Plaintiff could seek an issue-only certification under Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4) as to Equifax's liability and willfulness and leave the damages issue for individual determination.

81.     As described above, Equifax fails to remove from consumer reports extraneous court records pertaining to individuals other than the person about whom the consumer report relates. Equifax does so even though the other persons have names that are readily distinguishable based on different middle names or initials.

82.     Equifax violated § 1681e(b) of the FCRA as to Plaintiff and each of the class members by misattributing court proceedings to consumers when their middle names did not match the underlying record.

83.     As described above, Equifax had in place no procedures designed to present these violations, which are apparent by even a cursory review of the records on which Equifax was relying.

84.     Plaintiff and each putative class member suffered real and actual harm and injury.

85.     For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Equifax's files and reports.

86.     Class members also were falsely painted as irresponsible tenants to their prospective landlord.

87.     Equifax's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.

88.     As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs under 15 U.S.C. § 1681n.

**COUNT III – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c(a)**
**Class Claim**

89.     Plaintiff restates each of the preceding allegations.

90.     Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a class defined as follows:

> All natural persons residing in the United States (a) who were the subject of a tenant screening report sold by Equifax; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which identified the applicant as having been party to a court proceeding; (d) which did not result in a criminal conviction; (e) that antedated the report by seven or more years.

91.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Equifax and the class members may be notified of the pendency of this action by published, mailed notice, or both.

92.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Equifax needed to remove, after seven years, court records that did not result

in a criminal conviction; (2) whether Equifax's conduct violated the FCRA; and (3) whether Equifax's conduct was willful.

93.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Plaintiff's claims are also based on the same facts and legal theories as each of the class members' claims.

94.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

95.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Equifax's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and

the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

96.     In the alternative, Plaintiff could seek an issue-only certification under Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4) as to Equifax's liability and willfulness and leave the damages issue for individual determination.

97.     This conduct violated § 1681c(a) of the FCRA as to the Plaintiff and each of the class members by reporting each consumer's court records for longer than the seven-year period permitted by the FCRA.

98.     Plaintiff and each putative class member suffered real and actual harm and injury.

99.     For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Equifax's files and reports.

100.    In each case, each class member's background report contained derogatory information that Equifax was not permitted to report.

101.    Equifax's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.

102.    As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs under 15 U.S.C. § 1681n

### COUNT IV – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(a)
### Class Claim

103.    Plaintiff restates each of the preceding allegations.

104.    Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for violating § 1681e(a) for the same class identified in Paragraph 90 above.

105. **Numerosity.** **Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Equifax and the class members may be notified of the pendency of this action by published, mailed notice, or both.

106. **Predominance of Common Questions of Law and Fact.** **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Equifax had in place reasonable procedures designed to avoid violations of 15 U.S.C. § 1681c(a); (2) whether Equifax's conduct violated the FCRA; and (3) whether Equifax's conduct was willful.

107. **Typicality.** **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Plaintiff's claims are also based on the same facts and legal theories as each of the class members' claims.

108. **Adequacy of Representation.** **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

109.   **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Equifax's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

110.   In the alternative, Plaintiff could seek an issue-only certification under Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4) as to Equifax's liability and willfulness and leave the damages issue for individual determination.

111.   As described above, Equifax failed to remove court records that did not result in a criminal conviction that antedated the report by more than 7 years.

112.   Equifax violated § 1681c(a) of the FCRA as to the Plaintiff and each of the class members by reporting each consumer's court records for longer than the seven-year period permitted by the FCRA.

113.   In turn, Equifax had in place no procedures designed to present these violations, which are apparent by even a cursory review of the records Equifax is reporting.

114.   Plaintiffs and each putative class member suffered real and actual harm and injury.

115.    For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Equifax's files and reports.

116.    Class members also were falsely painted as irresponsible tenants to their prospective landlord.

117.    Equifax's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.

118.    As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs under 15 U.S.C. § 1681n.

**COUNT V – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**Individual Claim**

119.    Plaintiff restates each of the preceding allegations.

120.    Equifax violated multiple subsections of § 1681i, by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1).

121.    Because of Equifax's violations of §1681i, Plaintiff suffered actual damages, including the continued publication of false and defamatory information as part of the tenant screening process, damage to reputation, embarrassment, humiliation, and other emotional distress.

122.    Equifax's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an amount to be determined under 15 U.S.C. § 1681n.

123.    In the alternative, Equifax's violations were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory, actual, and punitive damages as pleaded, as well as her attorneys' fees and costs against Equifax; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**RONICA JOHNSON**

By: */s/ Kristi C. Kelly*
Kristi Cahoon Kelly, Bar No. 07244
J. Patrick McNichol, Bar No. 19034
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Phone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*